IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | | |
|---|---|---|
| **Lillian Butler Taylor**, | ) | C/A  2:12-0659-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **Science Applications International Corporation,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This action has been filed by the Plaintiff, a former employee of the Defendant,

asserting various claims for discrimination as well as a state law tort claim.  The Defendant filed a

motion to dismiss this case pursuant to Rule 12, Fed.R.Civ.P.  Plaintiff has filed a memorandum in

opposition to the Defendant's motion, to which the Defendant has filed a reply memorandum.

Defendant's motion is now before the Court for disposition.[1]

### Allegations of the Complaint

Plaintiff, an African American female, alleges in her Complaint that she began

working for the Defendant on November 17, 2007 as a commercial drivers license (CDL) certified

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.  The Defendant has filed a motion to dismiss.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



driver. Plaintiff alleges that she subsequently became a quality assurance (QA) specialist, a data entry clerk, and a shipping/receiving associate.

Plaintiff alleges that approximately one (1) year after she began working for the Defendant, she "noticed that she was treated differently from other employees due to her gender and disability". Specifically, Plaintiff alleges that she notified the Human Resources Department about "disability parking issues" and about obtaining a "holograph" sticker, but that her only results were "promises that the issues would be resolved but they never were". Plaintiff alleges that on April 29, 2011 she was laid off from her employment "under the guise of a reduction in force", even though other drivers who were hired after her kept their jobs. Complaint, ¶ ¶ 9-13.

In her **First Cause of Action**, Plaintiff asserts a claim for "Americans with Disabilities Act discrimination in violation of Title VII".[2] Plaintiff alleges in this Cause of Action that in April 2008 she was denied access to the handicapped parking area inside the Defendant's parking lot.[3] Plaintiff alleges that she needed a holograph sticker to get into that parking lot. Plaintiff alleges that she was informed that Leroy Wyatt had directed that she not be let into the parking lot. Plaintiff alleges that she told Wyatt that she had a handicapped sticker and that the parking area at issue was the only handicapped parking lot for the Defendant, following which Wyatt instructed her to ask a supervisor about the parking issue. Plaintiff alleges that she then spoke to Karl Chronister, an SAIC manager, about the parking issue, and that Chronister told her he did not

---

[2]Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, gender, religion, or national origin. 42 U.S.C. § 2000e-2. Title VII does not prohibit discrimination based on a disability. However, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117, et seq., does prohibit discrimination on the basis of a disability. Therefore, the undersigned has assumed that Plaintiff has intended to assert a claim in her First Cause of Action under the ADA, not Title VII

[3]Prior to April 2008, Plaintiff apparently did have access to this parking lot. See Complaint, ¶ 15.



see a problem with her parking in the handicapped parking lot. Plaintiff alleges that Chronister stated he would speak to Wyatt about the issue and would contact the Space and Naval Warfare Systems Command (SPAWAR) about getting a holograph for the Plaintiff.[4] However, Plaintiff alleges that four (4) months passed and she was still unable to park in the handicapped parking lot, so she was forced to walk approximately two (2) miles from the general parking lot to her work building.

Plaintiff alleges she spoke with Marsha Serrie with Human Resources about obtaining a holograph sticker, and that although Serrie indicated she would look into the issue, another three (3) months passed without Plaintiff hearing anything from either Seerie or Chronister about the holograph. As a result, Plaintiff contacted Kelly Dark, a Human Resources representative in the Defendant's Virginia office, who "re-opened" Plaintiff's case. Plaintiff alleges that after her case was "re-opened", she spoke with Kerrie Laneau in the Charleston Human Resources office, who told her she would research the issue and get back with her. However, Plaintiff alleges that she never heard anything back from any of these individuals with regard to the holograph.

Plaintiff alleges that due to a worsening of her condition she contacted a specialist, Dr. Marshall Kalinsky, who recommended that Plaintiff wear an insert in her steel toe shoes to help with her walking. Plaintiff alleges that Dr. Kalinsky also wrote a letter to SAIC officials on November 24, 2009, asking the company to allow Plaintiff to park as close as possible to her place of work. Plaintiff alleges that she later learned that James Polk, who worked for SPAWAR, could issue holographs, and that when she took Dr. Kalinsky's letter to Polk she was issued a holograph

---

[4]Plaintiff alleges that the Defendant is a private corporation that operates as a government contractor at a facility located in Charleston, South Carolina. See Complaint, ¶ 7. Based on this reference to SPAWAR, the undersigned has assumed that the facility where Plaintiff worked is a SPAWAR facility, although Plaintiff never makes that clear in her Complaint.



in three to four days.

Plaintiff also alleges that during the work week of February 11, 2009, she fell while getting out of a mine resistant ambush protected (MRAP) truck and hurt her ankle. Plaintiff alleges that she was not driven to "Concentra", so she had to drive herself. Plaintiff also alleges that "Alfred Haynes" was aware that her doctor had placed her on light duty, but that he refused to adhere to the doctor's orders. Plaintiff alleges that Haynes asked her to climb inside of a MRAP that had a broken step, and that when Plaintiff explained to him that she was not able to do that, Haynes "still attempted to force the Plaintiff to climb [into] the MRAP . . . ." Plaintiff alleges, however, that another employee "stepped in" and said that they would drive the truck and proceeded to climb into the truck. Plaintiff alleges that Haynes was angry about this incident. Plaintiff also alleges that, on another occasion, Haynes sent her to the Quality Assurance Officer, knowing that she would be walking all that day, even though other drivers were not as busy as she was, and even though she was still on light duty. Plaintiff alleges that the following day her physician diagnosed Plaintiff with a "really bad sprain", instructed her stay off of her feet as much as possible, and continue on light duty.

In her **Second Cause of Action** Plaintiff asserts a claim against the Defendant for gender discrimination in violation of Title VII. As part of this claim, Plaintiff alleges that during her first review, which was a six (6) month review, the night shift transportation leader (Marty Miller) suggested that she receive a five percent (5%) increase due to her good work. However, Plaintiff alleges that when she subsequently received her annual review, which was conducted by Kennith Ruff, who had only taken over the night shift transportation lead position one month prior to conducting the review, she was not given any pay increase, even though Ruff gave a male employee an eight percent raise. Plaintiff alleges that she performed well in her position, while the male who



received an eight percent raise "sleeps and goofs around while at work and missed many days". Plaintiff alleges that she had another review six months later, which was conducted by Wyatt and Harry Fisher, even though they had only been supervisors for two months. Plaintiff alleges that these two individuals gave her a one percent raise. Plaintiff alleges, however, that "many people who worked in the 'preferred click', which were all male, were given as much as an 11% raise," even though those workers did not work as hard as she did and were not as well qualified.

Plaintiff alleges that after Miller was replaced by Ruff, she "immediately felt uncomfortable at her job". Plaintiff alleges that on Ruff's fourth day of working as the shift leader, he removed Plaintiff from her position uploading data into the tracking database to a position in quality assurance.[5] Plaintiff alleges that when she asked Ruff about the move, he said that he would be cross training all employees, but that no other employees were ever moved.

Plaintiff also alleges that female employees with the Defendant were routinely paid far less than their male counterparts, that she received a one percent raise whereas male employees hired before and after her with poor work performance and "incapability" received raises of up to eleven percent, that despite numerous complaints with regard to pay and treatment the Defendant refused to change its policies and procedures, and that her termination occurred under circumstances giving rise to an inference of gender discrimination.

In her **Third Cause of Action**, Plaintiff asserts a claim for retaliation in violation Title VII. Plaintiff alleges that while working in QA, she was in an altercation with coworker Delores Williams. Plaintiff alleges that Williams was in a romantic relationship with Ruff, and

---

[5]Although Plaintiff is only asserting a claim for gender discrimination in her Second Cause of Action, Plaintiff makes a statement in the text of this Cause of Action that her move to quality assurance by Ruff was an "adverse employment action based on her race, disability and gender". <u>See Complaint</u>, ¶ 49.



always received special treatment. Plaintiff alleges that Williams would "knock over the Plaintiff's things, throw thing[s] near the Plaintiff's face and make rude comments to the Plaintiff." Plaintiff alleges that she along with several other employees complained to Human Resources about Williams behavior, but that Human Resources took no action. Plaintiff further alleges that she had a conference with Ruff about Williams, following which Ruff moved Williams to the North 40 area, "even though [Williams] was not able to perform the tasks in that area". Plaintiff alleges that Williams caused "several incidents" involving MRAPs, for which any other employee would have been terminated, but that instead Williams was moved to several different departments because of her harassing other employees, lack of working, and lack of skills demanded to perform the job. However, she was not terminated.

Plaintiff also alleges that she did not get a raise even after asking about a raise, suffered numerous and continued adverse actions including threats and disparate pay, and was ultimately terminated, and that a direct causal connection exists between her "protected activity" and the adverse actions she suffered.

In her **Fourth Cause of Action**, Plaintiff alleges a pendant state law claim for negligent supervision. Plaintiff alleges that the Defendant's night shifts were becoming "dismembered" due to low contracts, and that even though she had the training and experience needed for this position, which other employees did not have, and she asked to stay on the night shift, she and the only other female employee were replaced on the night shift position by two male employees. Plaintiff alleges that, after two months, the male employees moved back to day shift positions, and that although she then asked to be moved back to the night shift, she never got an answer.



Plaintiff alleges that during the time she was working day shift, she "decided to take a walk with another employee to keep her legs from swelling and also to stay awake due to lack of work", but that she and the employee she was going to walk with, a white female, were informed by Alfred Haynes that "there could be no walking unless it was on lunch hours but until then, they would have to 'sit' in his view". Plaintiff alleges that the following day, Haynes made a new lunch schedule that separated her and the white employee. Plaintiff alleges that she and her female coworkers were also informed that company policy prohibited them from using their cell phones, even though she witnessed other employees using their cell phones. Plaintiff alleges that when she mentioned this to Haynes and Leroy Watt, they ignored her.

Plaintiff alleges that during the time she worked in the North 40 area, many employees were allowed extended breaks and lunch times without consequences. However, one day Plaintiff was only one minute late and she was asked to remove that one minute time from her time clock. Plaintiff said she even had to sign documentation. On another occasion, on February 8, 2009, Plaintiff alleges that Haynes walked into the trailer where Plaintiff was on her lunch break and asked Plaintiff about her steel toe shoes. Plaintiff alleges that she told him that she had taken them off while she was eating. Plaintiff alleges that the day before, another employee (Scott Munoz) had worn his all day and nothing was said to him. Plaintiff alleges that Haynes continued to treat her poorly that day.

Plaintiff alleges that, one day when she was on break, Dave Deaver called her to drive a truck. Plaintiff alleges that she explained that she was on break and to get another driver, but that Deaver told her that she "was to be on the truck". Plaintiff alleges that her leader, Watts, had told the other leaders that they were required to have Plaintiff's "ass" in every truck that moved. Plaintiff



alleges that, despite others drivers asking to drive the MRAP, she was forced to drive the truck on her break. Plaintiff alleges that the Defendant knew or had reason to know of the conduct of Watts, Haynes, Fisher, Chronister and Ruff, and had the means to control their actions against the Plaintiff but did not do so.

Plaintiff seeks monetary relief in her Complaint.

## Discussion

As noted, the Defendants argue entitlement to dismissal of Plaintiff's claims pursuant to Rule 12(b), Fed.R.Civ.P. When considering a motion to dismiss pursuant to Rule 12(b), the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## I.

### (ADA Claim)

In her First Cause of Action, Plaintiff alleges that she was discriminated against in violation of the ADA when the Defendant denied her a holograph sticker and did not allow her to park in the handicapped parking lot, was forced to drive an MRAP during the work week of February 11, 2009 even though she had been placed on light duty by her doctor, and that on another occasion she was sent to see the quality assurance officer even though it required her to do a lot of walking.[6]

---

[6]In its motion to dismiss, Defendant states that Plaintiff also "appears" to be asserting a claim that she was terminated on the basis of a disability. However, no such claim is made in Plaintiff's First Cause of Action, although Plaintiff does later allege that her termination was due to sex discrimination. See Complaint, ¶ ¶ 50-52. In a separate section of her Complaint entitled "Factual
(continued...)



Defendant argues that Plaintiff failed to properly exhaust her ADA disability claim as set forth in her Complaint, and that this claim should therefore be dismissed.

The ADA requires that, before filing a lawsuit in United States District Court, a claimant must first file a charge of discrimination with the EEOC setting forth the claim being asserted within one hundred eighty days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty days of the state agency's termination of its proceedings, whichever is earlier.  See 42 U.S.C. § 2000c-5(e); 42 U.S.C. § 12117(a)[ADA adopts procedures set forth in § 2000e-5(e)]; 29 U.S.C. §626(d)(2).  Since South Carolina is a deferral state, the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of Defendant's motion, and the three hundred (300) day limitations period applies.  Plaintiff filed her administrative charge of discrimination with SCHAC on June 14, 2011.  See Defendant's Exhibit A.[7]  Therefore, Plaintiff is barred from pursuing claims in this lawsuit with respect to any alleged discriminatory act

---

[6](...continued)
Allegations", Plaintiff states that she was "laid off from her employment through no fault of her own on April 29, 2011, under the guise of a reduction in force.  Drivers that were hired after the Plaintiff kept their jobs."  See Complaint, ¶ 13.  However, this allegation again makes no claim that Plaintiff was terminated because of a disability.

[7]"In the employment context, a court may consider an EEOC charge and other EEOC documentation [when considering a motion to dismiss] because such documents are integral to the complaint as Plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme."  Williams v. 1199 Seiu United Healthcare Workers East, No. 12-72, 2012 WL 2923164 at * 1 n. 1 (D.Md. July 17, 2012) (citing Holowecki v. Fed. Express Corp., 440 F. 3d 558, 565-566 (2d Cir. 2006); McDougall v. Maryland Transit Auth., No. 11-3400, 2012 WL 1554924 at n. 3 (D.Md. Apr. 27, 2012)["a plaintiff's administrative discrimination charge is integral to a subsequent discrimination complaint."]).



which occurred more than three hundred days prior to that date; i.e., August 18, 2010. <u>United Black Firefighters of Norfolk v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979); <u>Mickel v. South Carolina State Employment Serv.</u>, 377 F.2d 239, 242 (4th Cir. 1967); <u>see</u> <u>National RR Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110 (2002).[8]

   Defendant argues that because all of the ADA claims alleged by Plaintiff in her First Cause of Action occurred prior to August 18, 2010, they are time barred and should be dismissed. However, a review of Plaintiff's factual allegations reveals that it is actually not clear when Plaintiff alleges she was subjected to the claimed discriminatory treatment. Plaintiff alleges she was denied access to a handicapped parking spot in April 2008, that she obtained a letter from her physician on November 24, 2009 asking the company to allow her to park as close as possible to her place of work, and that sometime thereafter (date not provided) she took the letter to James Polk with SPAWAR, and that she was thereafter issued a holograph in "three to four days . . . ." <u>Complaint</u>, ¶ 25. The incident Plaintiff alleges concerning having to climb inside the MRAP when she had the letter from her physician restricting to her to "light work" is alleged to have occurred sometime after February 11, 2009, but again no date is provided. <u>See</u> <u>Complaint</u>, ¶ ¶ 28-31. Similarly, there is no date provided for when Haynes allegedly required Plaintiff to go to the Quality Assurance office "knowing that she would be walking all that day." <u>See</u> <u>Complaint</u>, ¶ 32.

---

[8]A claimant may in some circumstances include claims beyond the required three hundred day period where the Defendant's conduct is deemed to be a "continuing violation". However, under the applicable caselaw, separate and distinct acts of discrimination, as are alleged by the Plaintiff here, are not considered as part of a "continuing violation". <u>See</u> <u>National RR Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110 (2002) [Finding that discrete acts of discrimination and each adverse employment action constitutes a separate actionable "unlawful employment practice", and prior discreet discriminatory acts which are not filed withing the 300 day time limit "are untimely filed and no longer actionable"].



Plaintiff argues in her response to the Defendant's motion that because "there is apparently a factual dispute over if and when any accommodation occurred", the Defendant's motion should be denied. However, it is the *Plaintiff* who has the burden of setting forth sufficient factual allegations to establish her claims. See Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; see also Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976) ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]. Plaintiff apparently wants the Court to assume that she did not get her holograph sticker, as well as that the incidents involving the MRAP truck and the Quality Assurance work, all occurred after August 18, 2010. However, the Court can make no such assumptions in ruling on a motion to dismiss. Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; see Twombly, 550 U.S. at 555 ["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"].

Therefore, if the three events discussed hereinabove did in fact occur (or Plaintiff alleges they occurred) after August 18, 2010, Plaintiff should provide the factual allegations to establish this requirement as part of any objections filed to this Report and Recommendation for review by the District Judge. This will allow the Court to determine whether allowing Plaintiff to amend her Complaint would be appropriate. Cf. Veney v. Wyche, 293 F.3d 726, 730 (4th Cir.



2002)["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing <u>Harrison v. United Postal Service</u>, 840 F.2d 1149, 1152 (4th Cir. 1988). If, however, these events did not occur after August 18, 2010, then Plaintiff's ADA claim should be dismissed.

## II.

### (Gender Discrimination Claim)

In her Second Cause of Action, Plaintiff alleges she was discriminated against on account of her sex (female) in violation of Title VII. Defendant argues that this Cause of Action should be dismissed because, as with Plaintiff's ADA claim, Plaintiff is attempting to obtain relief for conduct which occurred outside of the required three hundred day filing period. Defendant further argues that Plaintiff has failed to set forth factual allegations establishing a claim of sex discrimination sufficient to withstand a Rule 12(b)(6) motion to dismiss.

Reviewing Plaintiff's allegations, Plaintiff alleges she was hired on November 17, 2007. <u>Complaint</u>, ¶ 9. Plaintiff then complains that she did not receive a pay increase at her annual review, which would have been in 2008. <u>Id</u>., ¶ ¶ 41-42. Plaintiff then complains that six months later, she only received a one percent raise, although others received substantially more. <u>Id</u>., ¶ ¶ 43-45. This would have been around May 2009. Plaintiff then alleges that, despite numerous complaints with regards to pay and treatment, the Defendant refused to change its policies and procedures, and further alleges that her subsequent termination occurred under circumstances which give rise to an inference of gender discrimination. <u>Id</u>., ¶ ¶ 50-52. While it is apparent that the



complained of pay actions occurred prior to August 18, 2010, each paycheck Plaintiff received from the Defendant stemming from a discriminatory decision or pay structure constitutes an independent employment action. See 42 U.S.C. § 2000e-5(e)(3)(A) [The Lilly Ledbetter Fair Pay Act]; cf. Vogeler v. Conserv., FS, No. 10-50258, 2012 WL 357913, at *2 (N.D. Feb. 1, 2012) ["Ledbetter Act" is directed at situations such as unequal pay for equal work]; Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 446 (2d Cir. Nov. 20, 2011)[Ledbetter Act "retroactively overruled the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007)]. Hence, if Plaintiff was discriminated against in her pay because of her gender, that discrimination would have continued all the way through the last paycheck she received prior to her termination on April 29, 2011, and Plaintiff's equal pay claim would not be subject to dismissal as having been untimely filed. A claim that Plaintiff was terminated on April 29, 2011 because of her gender would also be timely. Therefore, the Defendant is not entitled to dismissal of Plaintiff's gender discrimination claim on this ground.

Turning then to the merits of Plaintiff's gender discrimination claim, this a disparate treatment claim, and in order to survive the Defendant's motion to dismiss and proceed with this claim the Complaint must set forth sufficient factual matters to state a plausible claim for intentional discrimination based on Plaintiff's gender. Under the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),[9] Plaintiff can meet this standard (at

---

[9]Plaintiff could avoid proceeding under the McDonnell Douglas framework if she had direct evidence of gender discrimination by the Defendant. Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (continued...)



least for purposes of a motion to dismiss) through allegations sufficient to reasonably infer a prima facie case of discrimination;[10] i.e., by showing that 1) she is a member of a protected class; 2) that she was performing her jobs satisfactorily; 3) that she was subjected to adverse employment actions; and 4) that other employees who were not members of her protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996); Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994); see Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

Here, with respect to her pay claim, Plaintiff alleges that she is a member of a

---

[9](...continued)
(5th Cir. 1981), cert. denied, 455 U.S. 943 (1982). However, no direct evidence of gender discrimination is contained in any of the allegations of the Complaint. The court also notes that Plaintiff has made no argument for consideration of this claim under a "mixed-motive analysis. Cf. Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2003)(citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999)[declining to engage in a "mixed motive" analysis where neither party argued a mixed-motive theory of liability]. Therefore, Plaintiff must prove her claim under the McDonnell Douglas framework.

[10]See Gladden v. Solis, No. 11-3120, 2012 WL 3009275 (3rd Cir. July 24, 2012)[To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); see also Johnson v. Scotts Co., No. 11-20, 2011 WL 6415521 at * 2 (S.D.Ohio Dec. 21, 2011)["To survive Defendant's motion to dismiss, [plaintiff] need only establish a prima facie case of discrimination."] (citing Cox v. Shelby State Comty. College, 48 Fed. Appx. 500, 506 (6th Cir. 2002).



protected class (female); see Complaint, ¶ 6; that she was performing her job satisfactorily; Id., ¶¶ 39, 41, 44; that she was subjected to an adverse employment action by receiving little or no pay increases; Id., ¶¶ 41, 43; and that other employees who were not members of her protected class were treated more favorably. Id., ¶¶ 42, 45, 50. The Defendant correctly notes, however, that in making these allegations, Plaintiff fails to identify the male employees Plaintiff alleges received more favorable treatment in terms of their pay or provide any other specifics to establish a disparity between her and any male employees, and argues that allegations made in such a general and conclusory manner are subject to dismissal. See Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) [noting that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief"], quoting Twombley, 550 U.S. at 557 (internal quotations marks omitted); Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) ["I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"]; see also Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"]. However, as Plaintiff has set out the basic parameters of her equal pay prima facie case as noted above, the undersigned finds that she should first be provided the opportunity to amend her allegations to include the required specifics with respect to this claim before a dismissal is entered. Harmon v. Unisys Corp., 356 Fed. Appx. 638, 641 (4th Cir. Dec. 4, 2009)[Finding that although Plaintiff's complaint could have been more specific with regard to which individuals were her comparators, she should have been allowed to amend her complaint rather than having claims dismissed with prejudice]; cf. Veney, 293 F.3d at 730 ["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must



be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing <u>Harrison</u>, 840 F.2d at 1152; <u>see also</u> <u>Moss v. Pasquotank County</u>, No. 10-56, 2012 WL 2325846, at * 7 (E.D.N.C. June 19, 2012)["[E]ven if a Plaintiff does not plead facts supporting an inference of differential treatment of similar situated individuals outside plaintiff's protective class, the plaintiff can still present a <u>prima facie</u> case provided that [she] can point to facts tending to establish that [she] suffered an adverse employment action under circumstances giving rise to an inference of discrimination"] (quoting <u>Hobson v. St. Luke Hospital & Health Network</u>, 735 F.Supp. 2d 206, 214 (E.D.Pa. 2010) (citing and internal quotations omitted). As with Plaintiff's ADA claim, these specific factual allegations should be provided as part of any objections to this Report and Recommendation for review by the District Judge, so that a decision as to whether Plaintiff should be allowed to amend her Complaint can be made. If, however, Plaintiff fails to set forth sufficient additional factual allegations to establish an equal pay claim as discussed hereinabove, this claim should be dismissed. <u>Dickson</u>, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].

Finally, to the extent Plaintiff has intended to include her termination as a claim under her gender discrimination cause of action, Plaintiff has made no allegations whatsoever in her Second Cause of Action to tie her dismissal to discrimination based on her sex. In the event any order of the Court adopting this Report and Recommendation allows Plaintiff to amend her Complaint to cure other deficiencies previously noted in this Report and Recommendation, that order could also allow Plaintiff to add additional factual allegations that establish her claim that her termination was due to gender discrimination, if she has any. Absent any such amendment, however,



to the extent Plaintiff has intended in her Complaint to allege that she was terminated because of her gender, any such claim should be dismissed. <u>Frey</u>, 44 F.3d at 671 ["Complaint must contain facts which state a claim as a matter of law . . . ."]; <u>see also</u> <u>Harper</u>, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].

### III.

### (Retaliation Claim)

With respect to Plaintiff's Third Cause of Action for retaliation in violation of Title VII, Defendant argues that this claim must be dismissed because Plaintiff failed to exhaust her administrative remedies with respect to any such claim. The undersigned agrees.

As previously noted, in order to bring a lawsuit in United States District Court asserting a claim for discrimination, a Plaintiff is first required to properly exhaust his or her administrative remedies by (in this case) filing an administrative charge of discrimination within three hundred days from the alleged discriminatory act or acts.[11] Plaintiff filed her administrative charge with SCHAC on June 14, 2011. <u>See</u> Defendant's Exhibit A. However, a plain reading of Plaintiff's administrative charge shows that she did not check the "retaliation" box on the charge, nor does Plaintiff assert a retaliation claim in the underlying text of her administrative charge. Rather, Plaintiff clearly only asserted claims for race, sex and disability discrimination in her administrative charge, and Plaintiff may not now change, or add a new, theory of liability to her claims against the Defendant in this lawsuit. <u>See</u> <u>Marshall v. Federal Exp. Corp.</u>, 130 F.3d 1095,

---

[11]While the undersigned previously discussed this requirement as part of Plaintiff's First Cause of Action asserting a claim under the ADA, the same administrative requirement exists with respect to a claim brought pursuant to the Title VII. <u>See</u> 42 U.S.C. § 2000e-5(e).



1098 (D.C.Cir. 1997) ["[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to timely file the EEOC charge."] (quoting <u>Schnellbaecher v. Baskin Clothing Co.</u>, 887 F.2d 124, 127 (7th Cir. 1989)).

        In her response memorandum, Plaintiff argues that she should be allowed to assert a retaliation claim in this lawsuit because such a claim is "reasonably related" to her administrative charge. However, in her SCHAC administrative charge Plaintiff only alleges that she was denied a reasonable accommodation for a disability, denied equal pay, and that she therefore believes she was discriminated against because of her sex, race and disability. She simply makes no allegation or reference to any retaliation or retaliatory conduct whatsoever. <u>See</u> Defendant's Exhibit A. Therefore, as the record and evidence before this Court shows that Plaintiff failed to administratively exhaust a claim that she was retaliated against for engaging in protected activity, this claim is procedurally barred from consideration by this Court, and Plaintiff's Third Cause of Action asserting a claim for retaliation in violation of Title VII should be dismissed. <u>Smith v. First Union National Bank</u>, 202 F.3d 234, 247 (4th Cir. 2000) [EEOC charge "defines the scope of [a plaintiff's] subsequent right to institute a civil suit"]; <u>Sloop v. Memorial Mission Hosp., Inc.</u>, 198 F.3d 147, 148 (4th Cir. 1999) [a Title VII claimant must first exhaust administrative remedies with regard to their claim before filing the claim in federal court]; <u>Chacko v. Patuxent Institution</u>, 429 F.3d 505, 509 (4th Cir. 2005); <u>Polsby v. Chase</u>, 970 F.2d 1360, 1363 (4th Cir. 1992) ["Procedural requirements...for gaining access to the ...courts are not to be disregarded by courts out of a vague sympathy for particular litigants"], <u>vacated on other grounds</u>, 113 S.Ct. 1940 (1993); <u>Frey v. City of Herculaneum</u>, 44 F.3d 667, 671 (8th Cir.



18

1995)["Complaint must contain facts which state a claim as a matter of law . . . ."].

## IV.

### (Negligent Supervision Claim)

In her Fourth Cause of Action, Plaintiff alleges that she was improperly taken off the night shift, was improperly monitored by her supervisors and unfairly scrutinized, and given job assignments/requirements that other employees were not required to meet, and asserts a claim for negligent supervision under state law. Defendant asserts that this claim is barred by the exclusive remedy provision of the South Carolina Workers Compensation Act, and the undersigned is constrained to agree.

South Carolina courts applying § 42-1-540 [the exclusive remedy provision of the Workers Compensation Act] have specifically held that an employee's claims against an employer for injury based on negligent supervision are covered by the Workers' Compensation Act. See Dickert v. Metropolitan Life Ins. Co., 428 S.E.2d 700, 701 (S.C. 1993)[holding that the Act provides the exclusive remedy for work-related injuries, and that claims for negligence, including hiring, retention, and supervision, as well as emotional distress are covered by the Act]; Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278, at * 3 (D.S.C. Sept. 20, 2006); Loges v. Mack Trucks, 417 S.E.2d 538 (S.C. 1992)[Dismissal of claim of negligent supervision under Workers Compensation Act]; see also Powell v. Vulcan Materials Co., 384 S.E.2d 725 (S.C. 1989); Thompson v. J. A. Jones Const. Co., 19 S.E.2d 226 (S.C. 1942); Washington v. Hilton Hotels Corp., No. 07-2694, 2008 WL 747792, at * 4 (D.S.C. Mar. 17, 2008); Ray v. Bechtel Savannah River, Inc., No. 06-2946, 2007 WL 1960587 (D.S.C. July 2, 2007)[Granting motion to dismiss]. This finding is the same even where, as here, the Defendant's conduct is alleged to have

19



been wanton, willful and reckless.[12]  Washington v. Hilton Hotels Corp., 2008 WL 747792, at * 7;

Palmer v. House of Blues Myrtle Beach Restaurant Corp., 2006 WL 2708278, at * 3.

Plaintiff argues that her negligent supervision claim should survive Defendant's motion to dismiss because a workplace injury is not covered by the South Carolina Workers Compensation Act if the injury is inflicted by an employee who acts with a specific intent to injure. However, that exception only applies when the allegedly intentional conduct was committed by the employer through an "alter ego" of the employer itself.  See Edens v. Bellini, 597 S.E.2d 863, 869-870 (S.C.Ct.App. 2004)["An exception to the exclusivity provision exists where the injury is not accidental but rather results from the intentional act of the employer or its alter ego."].  None of individuals whom Plaintiff alleges treated her improperly are, or have even been alleged to be, "alter-egos" of the Defendant Science Applications International Corporation.  Rather, they are alleged to either be other employees at her facility or, at best, "lead" employees of her unit or job area.  see Dickert, 428 S.E.2d at 701 [To fall under this exception, the tortfeasor must be a "dominant" corporate owner or officer of the employer].

Finally, Plaintiff also argues that the harm she suffered as a result of her termination was not a workers compensation event.  Plaintiff's Brief, at pp. 14-15.  However, "a termination necessarily arises out of the employment relationship."  Rogers v. Piggy Wiggly Carolina Co., Inc., No. 09-2016, 2009 WL 4985813, at * 4; see also Baggott v. Southern Music, Inc., 496 S.E.2d 852, 854 (S.C. 1998); cf. Ward v. City of Myrtle Beach, 457 F.Supp.2d 625, 632, 646-647 (D.S.C. 2006)[holding that terminated employee's state law outrage and negligence claims were barred by

---

[12]Plaintiff asserts in her Fourth Cause of Action that the Defendant's conduct was " wilful, wanton, and reckless . . . ."  Complaint, ¶ 84.



South Carolina's Workers Compensation Act]; <u>Taylor v. Cummins Atlantic, Inc.</u>, 852 F.Supp. 1279, 1282-1283 (D.S.C. 1994)[Terminated employee's outrage claim precluded by S.C. Worker's Compensation Act]. Therefore, Plaintiff's Fourth Cause of Action for negligent supervision should be dismissed.

<u>**Conclusion**</u>

Based on the foregoing, it is recommended that the Defendant's motion to dismiss Plaintiff's Third and Fourth Causes of Action be **granted,** and that these claims be **dismissed.**

With respect to Plaintiff's First and Second Causes of Action, Plaintiff should be required to provide the necessary factual allegations to establish that she has viable claims under the ADA and for gender discrimination, all as is discussed hereinabove, <u>supra</u>, so that the Court can determine whether Plaintiff should be allowed to amend her Complaint and proceed with those claims in this lawsuit. If Plaintiff fails to do so, these causes of action should also be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____

August 14, 2012                          Bristow Marchant
Charleston, South Carolina        United States Magistrate Judge



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

